880 So.2d 64 (2004)
STATE of Louisiana
v.
Calvin PRESTON.
No. 04-KA-269.
Court of Appeal of Louisiana, Fifth Circuit.
July 27, 2004.
*65 Paul D. Connick, Jr., District Attorney, Terry M. Boudreaux, Thomas J. Butler, Frank Brindisi, Assistant District Attorneys, Gretna, LA.
Maurice L. Tyler, New Orleans, LA, for Defendant/Appellant.
Panel composed of Judges EDWARD A. DUFRESNE, JR., CLARENCE E. McMANUS and WALTER J. ROTHSCHILD.
WALTER J. ROTHSCHILD, Judge.
This is defendant's second appeal before this Court. Defendant, Calvin Preston, was charged by bill of information with possession of cocaine between 200 and 400 grams, a violation of LSA-R.S. 40:967(F)(1)(b). Defendant initially pled not guilty. On December 12, 2002, the trial judge held a hearing on defendant's motion to suppress and took the matter under advisement. On January 16, 2003, the trial judge denied the motion. Defendant subsequently entered a guilty plea reserving the right to appeal the trial judge's denial of his motion to suppress under State v. Crosby, 338 So.2d 584 (La. 1976). The trial judge imposed a sentence of ten years at hard labor and a $100,000 fine. Defendant filed a motion for appeal, which was granted.
On appeal, this Court vacated defendant's plea and sentence because of a reversible patent error. State v. Preston, 03-540 (La.App. 5 Cir. 10/28/03), 857 So.2d 42. In particular, this Court discovered that the record reflected that defendant pled guilty to possession with the intent to distribute 200 to 400 grams of cocaine, which is not a responsive crime to the original charge of possession of cocaine between 200 and 400 grams. Because the trial judge lacked the authority to accept the defendant's guilty plea, the plea and sentence were vacated and the matter was remanded for further proceedings. Id.
On December 15, 2003, defendant pled guilty to possession of cocaine between 200 and 400 grams under State v. Crosby, supra, again reserving his right to review of the ruling on his suppression motion.[1] *66 The trial judge imposed a sentence of ten years at hard labor and a $100,000 fine. Defendant made an oral motion for appeal, followed by a written motion which the trial judge granted.

FACTS
At the suppression hearing held on December 12, 2002, which was before defendant's first guilty plea, Deputy Shenandoah Jones of the Jefferson Parish Sheriff's Office testified to the facts surrounding the recovery of the cocaine. Deputy Jones testified that, on October 9, 2002 at approximately 3:00 p.m., defendant was driving a car directly in front of the officer's car and was traveling southbound on Edenborn. Defendant made a left turn into an apartment complex without activating his turn signal. Deputy Jones initialed a traffic stop, approached defendant's car, explained the reason for the stop, and requested the defendant's driver's license, registration and proof of insurance. Defendant provided a valid Louisiana driver's license, and a temporary license tag, but his proof of insurance was expired. Defendant stated that he had not received the new insurance card yet. Deputy Jones offered to telephone the insurance company to verify this information so that defendant's vehicle would not have to be towed.
Deputy Jones ran a criminal history check on defendant, which revealed that he had one felony arrest and eight misdemeanor arrests with no convictions on any of the charges. Deputy Jones then telephoned the insurance company, at which point, defendant knocked on the officer's vehicle window and asked if he could bring a bag inside the apartment complex. Deputy Jones told defendant the stop would be over shortly, to step back to his car, and not to move anything from the car until after the stop. Defendant returned to the car, knelt on the driver's seat and leaned into the back seat. Deputy Jones terminated the telephone call with the insurance company and approached the vehicle to determine what defendant was doing. Through the car's rear window, Deputy Jones saw defendant shoving a gray plastic bag underneath the passenger's seat. Concerned for his safety, Deputy Jones asked the defendant to exit the vehicle and asked defendant if there were any drugs or weapons in the vehicle. Defendant replied negatively. Deputy Jones also patted down the defendant and found no weapons. Deputy Jones asked defendant if he could look inside the vehicle for his "safety" and defendant replied "okay." Deputy Jones asked the question again, just to ensure that defendant had answered affirmatively. Defendant then replied "yes." There was nothing under the driver's side seat, but there was a bag under the passenger's seat that contained a clear plastic bag with white rock-like substances inside.
On cross-examination, Deputy Jones acknowledged that he had filled out many consent to search forms during his eight years as a police officer. However, he acknowledged that he did not ask defendant to sign a consent form.
Defendant testified that he did not give Deputy Jones permission to search his car. Defendant initially denied that he had approached Deputy Jones' vehicle to ask if he could bring a bag inside the complex. However, defendant then said he did not recall whether he had approached Deputy Jones' vehicle at any time during the stop.

DISCUSSION
By this assignment, defendant contends that the trial judge erred in denying his *67 motion to suppress the evidence. He specifically argues that the length of the detention constituted an unlawful seizure. Further, defendant contends the trial judge erred in believing Deputy Jones over defendant regarding the consent to search the vehicle. The State responds that the trial court properly denied the motion to suppress.
Initially, it is noted that the defendant advances the same argument as he urged in his first appeal. Although this Court stated in the first appeal that it had reviewed the trial court's ruling on the motion to suppress and found no error, the merits of the defendant's claim was not discussed. Rather, the Court vacated the plea and sentence because of a reversible error patent. State v. Preston, 03-540, p. 2. We will now discuss the merits of the defendant's claim.
The Fourth Amendment of the United States Constitution and Article I, Section 5 of the Louisiana Constitution prohibit unreasonable searches and seizures. However, the right of law enforcement officers to stop and interrogate one reasonably suspected of criminal conduct is recognized by LSA-C.Cr.P. art. 215.1, as well as state and federal jurisprudence. Terry v. Ohio, 392 U.S. 1, 88 S.Ct. 1868, 20 L.Ed.2d 889 (1968); State v. Belton, 441 So.2d 1195 (La.1983), cert. denied, 466 U.S. 953, 104 S.Ct. 2158, 80 L.Ed.2d 543 (1984). As a general rule, the decision to stop an automobile is reasonable when the police have probable cause to believe that a traffic violation has occurred. Whren v. United States, 517 U.S. 806, 810, 116 S.Ct. 1769, 1772, 135 L.Ed.2d 89 (1996); accord, State v. Waters, 00-356, p. 4 (La.3/12/01), 780 So.2d 1053, 1056. The standard is an objective one that does not take into account the subjective beliefs or expectations of the police officer. State v. Waters, citing, Whren, 517 U.S. at 813, 116 S.Ct. at 1774. Further, an officer has the right to conduct a routine license and registration check. State v. Lopez, 00-0562, p. 3 (La.10/30/00), 772 So.2d 90, 92-93.
LSA-R.S. 32:104 provides that a person who intends to make a right or left turn that will take his vehicle from the highway it is then traveling shall signal the intention to turn continuously during not less than the last one hundred (100) feet traveled by the vehicle before turning. Thus, Deputy Jones was authorized to effect a traffic stop because the defendant failed to give the appropriate signal of his intention to make a left turn into the parking lot.
Defendant concedes that Deputy Jones was authorized to verify his insurance information. However, defendant contends that Deputy Jones had no justification for extending the duration of the traffic stop. LSA-C.Cr.P. art. 215.1(D) provides as follows regarding the duration of a traffic stop:
D. During detention of an alleged violator of any provision of the motor vehicle laws of this state, an officer may not detain a motorist for a period of time longer than reasonably necessary to complete the investigation of the violation and issuance of a citation for the violation, absent reasonable suspicion of additional criminal activity. However, nothing herein shall prohibit a peace officer from compelling or instructing the motorist to comply with administrative or other legal requirements of Title 32 or Title 47 of the Louisiana Revised Statutes of 1950.
In United States v. Sharpe, 470 U.S. 675, 685, 105 S.Ct. 1568, 1575, 84 L.Ed.2d 605 (1985), the United States Supreme Court recognized that an investigatory stop that continues indefinitely will at some point no longer be justified as an *68 investigatory stop. In determining whether a detention is too lengthy to be considered as an investigatory stop, it is appropriate to examine whether or not the police diligently pursued a means of investigation that was likely to confirm or dispel their suspicions quickly. United States v. Sharpe, 105 S.Ct. at 1575; See also, State v. Miller, 00-1657 (La.10/26/01), 798 So.2d 947, 951.
In Miller, supra, the Louisiana Supreme Court held that the length of the defendant's detention, 53 minutes from the initial, routine traffic stop until the canine alerted on defendant's trunk, did not convert the encounter into a de facto arrest. The Miller court reasoned that defendant's nervous behavior and "unlikely explanation" for an overnight trip in a car which the officer discovered had been rented by a person who had a prior arrest for a possession of a substantial amount of marijuana, led to a reasonable "shift in the trooper's focus." Id. at 950. The officer radioed for the first available canine unit, and the canine officer, who was at home when he received the call, arrived on the scene within 34 minutes later. The Miller court stated that, although the length of the stop was nearly an hour at that point, its duration was reasonably correlated with the escalating level of suspicion as the officers pursued a means of investigation likely to confirm or dispel the trooper's suspicions without unnecessary delay. Id.
Although the record does not indicate the amount of time that transpired after the initial traffic stop, nothing in the record reflects that the duration of the stop was such that a de facto arrest occurred. Here, Deputy Jones was essentially doing the defendant a favor by telephoning his insurance company. Instead of telephoning the insurance company, Deputy Jones could have had the car impounded. See, LSA-R.S. 32:863.1(C)(1)(a), authorizing impoundment of an automobile when the operator fails to produce documentation of the statutorily required liability insurance. It was while on the telephone to the insurance company that Deputy Jones noticed defendant leaning over the seat of his car. Thereafter, Deputy Jones terminated the telephone call, walked to defendant's vehicle, and observed defendant shoving a plastic bag under the seat. After Deputy Jones patted down the defendant, the encounter was then extended by the defendant's consent to search the car. The officer did not need any degree of reasonable suspicion, to ask for, and receive, consent to search the car. See, State v. Strange, 04-273 (La.5/14/04), 876 So.2d 39.
However, defendant contends that the trial judge erred in believing Deputy Jones' testimony over his own testimony regarding consent. One of the exceptions to the warrant requirement is a search conducted pursuant to consent. Schneckloth v. Bustamonte, 412 U.S. 218, 219, 93 S.Ct. 2041, 2043, 36 L.Ed.2d 854 (1973); State v. Enclade, 03-353, p. 4 (La. App. 5 Cir. 9/16/03), 858 So.2d 8, 13. When the State relies on consent to justify a warrantless search, it has the burden of proving the consent was given freely and voluntarily. State v. Enclade, 858 So.2d at 15. Oral consent is sufficient and written consent is not required. State v. Ossey, 446 So.2d 280, 287, fn. 6 (La.1984), cert. denied, 469 U.S. 916, 105 S.Ct. 293, 83 L.Ed.2d 228 (1984). See also, State v. Enclade, supra. Voluntariness of consent is a question of fact which the trial judge is to determine based on the totality of the circumstances. State v. Enclade, 858 So.2d at 15.
Although defendant testified that he did not give Deputy Jones consent to search his vehicle, the trial court apparently *69 found the testimony of Deputy Jones to be more credible than that of defendant. When the trial court is presented with conflicting testimony, the credibility of the witnesses is a matter within the sound discretion of the trier of fact and will not be disturbed unless clearly contradictory to the evidence. State v. Enclade, supra. Nothing in the record indicates that the trial judge's decision was clearly contradictory to the evidence.
Finally, defendant contends that the search was invalid because Deputy Jones lacked authority to conduct a "protective sweep" of his automobile. However, the evidence was recovered pursuant to a consent search, not a "protective sweep."
This assignment is without merit.

ERROR PATENT DISCUSSION
The record was reviewed for errors patent, according to LSA-C.Cr.P. art. 920: State v. Oliveaux, 312 So.2d 337 (La.1975); State v. Weiland, 556 So.2d 175 (La.App. 5 Cir.1990). One error was discovered which requires corrective action:
The commitment and the transcript conflict in several respects. First, the commitment reflects that defendant pled guilty to possession of cocaine over 28 grams, while the transcript indicates defendant pled guilty to possession of 200 to 400 grams of cocaine. Additionally, the commitment reflects that the sentence was to be served concurrently with the sentence in case number 02-5931, while the transcript does not. Further, the commitment reflects that the trial judge ordered defendant to pay court costs, $150 to the "I Can" Drug Treatment Program, $100 Commissioner Fee, $20 Juror Fee, and a $2 Crime Stoppers Fee "plus other applicable fees," while the transcript does not. It is noted that the waiver of rights form indicates defendant was to pay court costs, but is silent regarding these other fees.
Generally, when there is a discrepancy between the minutes and the transcript, the transcript prevails. State v. Lynch, 441 So.2d 732, 734 (La.1983). Accordingly, we will remand the matter to allow the trial judge to correct the commitment to conform with the transcript. In all other respects, defendant's conviction and sentence are affirmed.
AFFIRMED; CASE REMANDED.
NOTES
[1] Although the commitment indicates that defendant pled guilty to possession of more than 28 grams of cocaine, the transcript and the waiver of rights form both indicate defendant pled guilty to possession cocaine between 200 to 400.